UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

CHRISTOPHER RYAN HARRIS,

    Plaintiff,

v().                                   Case No.:  8:23-cv-1635-DNF

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.
_____

# OPINION AND ORDER

Plaintiff Christopher Ryan Harris seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying his claim for a period of disability and disability insurance benefits. The Commissioner filed the Transcript of the proceedings ("Tr." followed by the appropriate page number), and the parties filed legal memoranda setting forth their positions. Plaintiff also filed a reply brief. As explained below, the decision of the Commissioner is **AFFIRMED** under § 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

**I.    Social Security Act Eligibility, Standard of Review, Procedural History, and the Commissioner's Decision**

    **A.    Social Security Eligibility**

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can

be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(i), 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a). The impairment must be severe, making the claimant unable to do his previous work, or any other substantial gainful activity which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505–404.1511, 416.905–416.911.

### B. Standard of Review

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion. Even if the evidence preponderated against the Commissioner's findings, we must affirm if the decision reached is supported by substantial evidence." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004). In conducting this review, this Court may not reweigh the evidence or substitute its judgment for that of the administrative law judge, but must consider the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (citation omitted); *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995); *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). Unlike findings of fact, the Commissioner's conclusions of law are not presumed valid and are

reviewed under a de novo standard. *Keeton v. Dep't of Health & Hum. Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994); *Maldonado v. Comm'r of Soc. Sec.*, No. 20-14331, 2021 WL 2838362, at *2 (11th Cir. July 8, 2021); *Martin*, 894 F.2d at 1529. "The [Commissioner's] failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal." *Keeton*, 21 F.3d at 1066.

The Commissioner must follow five steps in evaluating a claim of disability. 20 C.F.R. §§ 404.1520, 416.920. At the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful employment. 20 C.F.R. § 404.1520(a)(4)(i), (b); 20 C.F.R. § 416.920(a)(4)(i), (b). At step two, the Commissioner must determine whether the impairment or combination of impairments from which the claimant allegedly suffers is "severe." 20 C.F.R. § 404.1520(a)(4)(ii), (c); 20 C.F.R. § 416.920(a)(4)(ii), (c). At step three, the Commissioner must decide whether the claimant's severe impairments meet or medically equal a listed impairment. 20 C.F.R. § 404.1520(a)(4)(iii), (d); 20 C.F.R. § 416.920(a)(4)(iii), (d). If the Commissioner finds the claimant's severe impairments do not meet or medically equal a listed impairment, then the Commissioner must determine whether the claimant has the residual functional capacity ("RFC") to perform his past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv), (e)–(f); 20 C.F.R. § 416.920(a)(4)(iv), (e)–(f).

If the claimant cannot perform his past relevant work, the Commissioner must determine at step five whether the claimant's RFC permits him to perform other work that exists in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v), (g), 416.920(a)(4)(v), (g). At the fifth step, there are two ways in which the ALJ may establish whether the claimant is capable of performing other work available in the national economy. The first is by applying the Medical Vocational Guidelines, and the second is by the use of a vocational expert. *Phillips v. Barnhart*, 357 F.3d 1232, 1239-40 (11th Cir. 2004); *Atha v. Comm'r, Soc. Sec. Admin.*, 616 F. App'x 931, 933 (11th Cir. 2015).

The claimant bears the burden of proof through step four. *Atha*, 616 F. App'x at 933. If the claimant meets this burden, then the burden temporarily shifts to the Commissioner to establish the fifth step. *Id.*; 20 C.F.R. § 404.1520(a)(4)(v), (g); 20 C.F.R. § 416.920(a)(4)(v), (g). If the Commissioner presents evidence of other work that exists in significant numbers in the national economy that the claimant is able to perform, only then does the burden shift back to the claimant to prove he is unable to perform these jobs. *Atha*, 616 F. App'x at 993.

**C.  Procedural History**

Plaintiff applied for a period of disability and disability insurance benefits on April 7, 2021, alleging disability beginning April 17, 2009. (Tr. 80, 193-94). Plaintiff later amended the onset date of disability to May 7, 2020. (Tr. 17). The application

was denied initially and on reconsideration. (Tr. 80, 88). Plaintiff requested a hearing and on December 6, 2022, a hearing was held before Administrative Law Judge Kurt G. Ehrman ("ALJ"). (Tr. 32-57). On January 20, 2023, the ALJ entered a decision finding Plaintiff had not been disabled from May 7, 2020, through the date of the decision. (Tr. 17-26). On May 16, 2023, the Appeals Council denied Plaintiff's request for review. (Tr. 1-5).

Plaintiff began this action by Complaint (Doc. 1) filed July 20, 2023, and the case is ripe for review. The parties consented to proceed before a United States Magistrate Judge for all proceedings. (Doc. 10).

### D. Summary of ALJ's Decision

In this matter, the ALJ found Plaintiff met the insured status requirements of the Social Security Act through June 30, 2023. (Tr. 20). At step one of the sequential evaluation, the ALJ found that Plaintiff had not engaged in substantial gainful activity since May 7, 2020, the amended alleged onset date. (Tr. 20). At step two, the ALJ found that Plaintiff had the following severe impairments: "degenerative disc disease; obstructive sleep apnea; and obesity." (Tr. 20). At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526). (Tr. 20).

Before proceeding to step four, the ALJ found that Plaintiff had the following RFC:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 [C.F.R. §] 404.1567(b) except the claimant can lift and carry 20 pounds occasionally, and up to 10 pounds frequently; can stand and walk for about 6 hours and sit for about 6 hours in an 8 hour workday, with normal and customary breaks; must avoid climbing ladders, ropes, and scaffolds; can frequently climb ramps and occasionally climb stairs; can frequently balance, stoop, kneel, and crouch; can occasionally crawl; can frequently reach, handle, and finger; but should avoid overhead lifting; and must avoid concentrated exposure to extreme cold, extreme heat, vibration, and humidity, and use of hazardous industrial machinery and unprotected heights.

(Tr. 21).

At step four, the ALJ determined that Plaintiff was not capable of performing his past relevant work as a material handler/parts puller. (Tr. 24). At step five, the ALJ found that considering Plaintiff's age (48 years old on the amended alleged disability onset date), education (at least high school), work experience, and RFC, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform. (Tr. 24). Specifically, the vocational expert testified that a person with Plaintiff's limitations could perform such occupations as:

(1) Self-service attendant, DOT[1] 299.677-010, light, unskilled

---

[1] DOT refers to the *Dictionary of Occupational Titles*.

  (2) Housekeeper cleaner, DOT 323.687-014, light, unskilled

  (3) Cafeteria attendant, DOT 311.677-010 light, unskilled

(Tr. 25). The ALJ concluded that Plaintiff had not been under a disability from May 7, 2020, through the date of the decision. (Tr. 25).

## II. Analysis

On appeal, Plaintiff raises two issues:

  (1) The Commissioner erred in relying on false vocational expert witness testimony; and

  (2) The Commissioner failed to properly evaluate the opinion of Dr. Palanca.

(Doc. 19, p. 1).

### A. Vocational Expert Testimony

Plaintiff argues that at step five, the Commissioner relied on false vocational expert testimony in determining whether a significant number of jobs existed in the national economy that Plaintiff could perform. (Doc. 19 p. 4). Plaintiff claims that the vocational expert relied on Job Browser Pro produced by SkillTRAN Corporation, but when Plaintiff's counsel plugged in the proposed jobs, he found the vocational expert overestimated the job numbers. (Doc. 19, p. 6). Plaintiff first provided the additional information of Job Browser Pro screen shots to the Appeals Council, not the ALJ. (Tr. 1-5, 306-11).

"At step five, an ALJ must ascertain whether [the] jobs [that a claimant can perform] exist[ ] in significant numbers in the national economy." *Viverette*, 13 F.4th 1309, 1318 (11th Cir. 2021) (quotations omitted) (citing *Biestek v. Berryhill*, 587 U.S. ___, 139 S. Ct. 1148, 1152 (2019)). Whether there are a significant number of jobs in the national economy is a factual issue to be determined by a judicial officer. *Id.* "Work which 'exists in the national economy' means 'work which exists in significant numbers either in the region where [the] individual lives or in several regions of the country.'" *Goode v. Comm'r of Soc. Sec.*, 966 F.3d 1277, 1280 (11th Cir. 2020) (citing 42 U.S.C. § 423(d)(2)(A)). The Social Security Administration approximates the number of positions that exist, whether vacant or filled, and without regard to a claimant's likelihood of being hired. *Id.* (citations omitted). An ALJ may use a vocational expert or other specialist to assist in the step five determination. *Id.* Vocational experts may consult publications such as the DOT – even though it may be outdated – and may also consult other sources to obtain job numbers. *Id.*

At the hearing, Plaintiff posed no objection to the vocational expert's qualifications. (Tr. 37). The vocational expert testified that approximately 283,000 self-service store attendant jobs, 220,000 housekeeper cleaner jobs, and 115,000 cafeteria attendant jobs existed in the national economy. (Tr. 51). Later, Plaintiff questioned the vocational expert as to the source of the job numbers. (Tr. 55). The

vocational expert testified that he used a commercial product known as Job Browser Pro produced by SkillTRAN Corporation, which obtains statistics from the U.S. Department of Labor. (Tr. 55-56). Plaintiff's counsel asked what version of Job Brower Pro the vocational expert used, and he responded the desktop version 1.7.4.1. (Tr. 56). Finally, counsel asked: "And for the numbers that you gave us today, did you modify those in any way or you reported them as Job Browser Pro reported them?" (Tr. 56). The vocational expert responded: "Let me look. We three counselors at Fastrack Rehabilitation, we do meet periodically. And based on our observational work done, we do modify some numbers. Let me look at these. I believe there was no modification on these." (Tr. 56). In the decision, the ALJ adopted the vocational expert's job numbers. (Tr. 25).

Plaintiff argues that the Commissioner erred in relying on the vocational expert's testimony to deny Plaintiff's claim without first verifying whether it was accurate. (Tr. 6). According to the Eleventh Circuit, however, an ALJ need not independently verify job numbers.

> [T]to the extent that [Plaintiff] argues that the ALJ was required to independently verify a VE's testimony, we have held that the ALJ is only required to do so when there is a conflict between the VE's testimony and the DOT. Here, the conflict is between the number of available jobs the VE reported and the number of available jobs shown in the figures provided by the Bureau of Labor Statistics through its publication of the Occupational Employment Statistics ("OES"). Unlike the situation in which the VE's testimony conflicts with the DOT, this Court has not placed an affirmative duty on the ALJ to independently investigate a

> conflict between the VE's testimony and job availability figures provided by the Bureau of Labor Statistics in the OES.

*Webster v. Comm'r of Soc. Sec.*, 773 F. App'x 553, 555 (11th Cir. 2019). As a result, there was no requirement for the ALJ to have independently investigated and resolved conflicts between a vocational expert's testimony and information provided by Job Browser Pro, unless specifically raised by Plaintiff at the hearing before the ALJ, which it was not. Thus, based on Plaintiff failing to present evidence to the contrary and the vocational expert's uncontroverted testimony, the ALJ reasonably concluded that Plaintiff could perform the jobs listed and these jobs existed in significant numbers in the national economy.

Rather than raising any issue as to job numbers to the ALJ, Plaintiff presented screen shots from Job Browser Pro, version 1.7.4.1 for the three jobs to the Appeals Council, and argued that the vocational expert overestimated the job numbers for these jobs. (Tr. 306-11). Plaintiff contends that these screen shots show: (1) full-time sales attendant jobs of only 173,846 not 283,000 nationally; (2) full-time cleaner, housekeeper jobs of only 177,876, not 220,000 nationally; and (3) full-time cafeteria attendant jobs of only 19,088, not 115,000 nationally. (Tr. 308-10; Doc. 19, p. 6-7).

However, Plaintiff simply presented raw data (screen shots) from Job Browser Pro to the Appeals Council, arguing it undermines the reliability of the vocational expert's testimony to such an extent that the action should be remanded. (Doc. 19, p. 7-9). But Plaintiff's screen shots were unaccompanied by any analysis or

explanation from a vocational or other expert to put the raw date into context. *See Davis v. Berryhill*, No. 17-cv-293-N, 2018 WL 2208432, at *7 (S.D. Ala. May 14, 2018). Without an expert to interpret the raw data from the Job Browser Pro screen shots, the ALJ reasonably relied on the vocational expert's testimony on the number of jobs in the national economy and the Appeals Council committed no error.

### B.     Persuasiveness of Dr. Palanca's Opinion

Plaintiff argues that the ALJ did not properly evaluate the opinion of Eduardo Palanca, M.D. (Doc. 19, p. 12). Plaintiff claims the ALJ failed to explain how Dr. Palanca's opinion was not supported by his records and failed to explain how Dr. Palanca's opinion was inconsistent with other opinions of record. (Doc. 19 p. 16-17).

The regulations for disability cases filed after March 27, 2017 – such as this one – changed and an ALJ no longer defers or gives any specific evidentiary weight to a medical opinion. 20 C.F.R. § 404.1520c(a), 20 C.F.R. § 416.920c(a). Thus, an ALJ no longer uses the term "treating source" and does not defer or give specific evidentiary weight, including controlling weight, to any medical opinion or prior administrative medical finding. *Torres v. Comm'r of Soc. Sec.*, No. 6:19-cv-1662-ORL-PDB, 2020 WL 5810273, at *2 (M.D. Fla. Sept. 30, 2020) (citing 20 C.F.R. § 404.1520c(a)).

Instead, an ALJ assesses the persuasiveness of a medical source's opinions given these five factors, with the first two being the most important: (1) supportability; (2) consistency; (3) relationship with the claimant, including the length, frequency, and purpose of the examining and any treatment relationship; (4) specialization; and (5) other factors, such as the source's familiarity with other evidence concerning the claim, that tend to support or contradict the medical opinion. 20 C.F.R. § 404.1520c(a)-(c); 20 C.F.R. § 416.920c(a)-(c). An ALJ may but is not required to explain how he considers factors other than supportability and consistency, unless two or more opinions are equally persuasive on the same issue. 20 C.F.R. § 404.1520c(b)(2); 20 C.F.R. § 416.920c(b)(2).

For supportability, the revised rules provide: "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(1); 20 C.F.R. § 416.920c(c)(1). For consistency, the revised rules provide: "The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(2); 20 C.F.R. § 416.920c(c)(2).

The new regulations also differentiate between medical opinions and "other medical evidence." 20 C.F.R. §§ 404.1513(a)(2)-(3), 416.913(a)(2)-(3). "A medical opinion is a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions" in the abilities listed in paragraphs (a)(2)(i) through (iv). 20 C.F.R. §§ 404.1513(a)(2), 416.913(a)(2). "Other medical evidence is evidence from a medical source that is not objective medical evidence or a medical opinion, including judgments about the nature and severity of your impairments, your medical history, clinical findings, diagnosis, treatment prescribed with response, or prognosis." 20 C.F.R. §§ 404.1513(a)(3), 416.913(a)(3).

Dr. Palanca began treating Plaintiff in May 2019 and continued treating him through at least November 2021. (Tr. 329, 346). On May 31, 2022 – about six months after the last treatment record – Dr. Palanca completed a Medical Source Statement of Ability To Do Work-Related Activities (Physical). (Tr. 359-64). Dr. Palanca found, among other things, Plaintiff able to lift and carry up to 20 pounds occasionally, and sit, stand, or walk for a total of 30 minutes in an 8-hour workday. (Tr. 359-60). Dr. Palanca limited Plaintiff to occasionally reaching and handling, and frequently feeling and pushing and pulling with his hands, and frequently use foot controls. (Tr. 361). He also limited Plaintiff to occasionally climbing stairs, ramps, ladders, or scaffolds and to balancing, stooping, kneeling, crouching, and

crawling. (Tr. 362). Dr. Palanca found Plaintiff would miss three or more days per month. (Tr. 363). He explained that Plaintiff had to rest often and stretch intermittently to decrease his pain. (Tr. 360). Dr. Palanca found that Plaintiff had these limitations as of 2009. (Tr. 364).

Dr. Palanca supported these limitations with clinal findings such as chronic lumbar and thoracic pain with radiculopathy, and an MRI of herniated and bulging discs. (Tr. 360). Finally, Dr. Palanca found that sitting and standing for long periods of time, extreme activities, or lifting would increase back pain, and Plaintiff needed ice, rest, and leg elevation throughout the day. (Tr. 364).

In the decision, the ALJ summarized Dr. Palanca's treating records. (Tr. 22-23). The ALJ acknowledged that an MRI from many years before the alleged amended onset date showed degenerative changes in the spine, including disc herniations and bulges. (Tr. 22). He also noted that Dr. Palanca's examinations from March 2020 through March 2021, showed a reduced range of motion and tenderness over the nuchal area and neck, with normal strength in the bilateral upper and left lower extremities and 4/5 strength in the right lower extremity. (Tr. 22). In the September and November 2021 treatment records, the ALJ noted tenderness over the nuchal area with fair range of motion in the neck, and normal strength except for 4/5 in the right lower extremity, and intact sensation. (Tr. 23). The ALJ found, "[s]ignificantly, it is noted that Dr. Palanca reported that the claimant had normal

sensation in all of his extremities in these most recent physical examination reports (Exhibit B3F)." (Tr. 23). The ALJ found there were no reports after November 2021. (Tr. 23). The ALJ then summarized Dr. Palanca's Medical Source Statement, and noted it was completed about 6 months after the last treatment record. (Tr. 23).

As to the persuasiveness of Dr. Palanca's opinion, the ALJ found:

> The opinion of Dr. Palanca, as set forth in the medical source statement dated May 31, 2022 is not persuasive because it is not consistent with the physical examination findings he reported, the clinical examination findings reported by Dr. Beaman, or with the claimant's reports and hearing testimony. Furthermore, the opinion that the claimant had these limitations since 2009 is not consistent with the claimant's earnings records which show that he engaged in substantial gainful activity for many years after that date (Exhibits B4D and B6D).

(Tr. 23).

As to supportability, the ALJ found Dr. Palanca's treatment records were inconsistent with his physical examination findings. (Tr. 23). Plaintiff argues that because the ALJ used the word "inconsistent" rather than "unsupported," the ALJ failed to consider the supportability factor. (Doc. 19, p. 16). The decision is clear in finding that Dr. Palanca's opinion was inconsistent, or in other words, unsupported by his treatment records. In the decision, the ALJ thoroughly summarized Dr. Palanca's treatment notes, noting the MRI findings showing disc herniations and bulges, but also noted that Dr. Palanca's physical examinations showed at times a reduced range of motion and tenderness, but normal strength in the upper and lower

extremities, except for 4/5 of the right lower extremity. (Tr. 22-23). Further, in the most recent treatment note, Plaintiff had normal sensation in all of his extremities. (Tr. 23). As the ALJ found, these physical examinations do not support Dr. Palanca's extreme limitations findings, notably Plaintiff can sit, walk, or stand for only 30 minutes in an 8-hour workday. (Tr. 23). The ALJ sufficiently analyzed the supportability of Dr. Palanca's opinion.

As to consistency, the ALJ found Dr. Palanca's opinion inconsistent with the clinical examination findings of Thomas F. Beaman, DO. (Tr. 23). In September 2021, Dr. Beaman conducted a consultative examination of Plaintiff. (Tr. 338-43). He found Plaintiff's range of motion within normal limits and found Plaintiff was not impaired as to dexterity. (Tr. 338-40). He also found Plaintiff had full muscle strength in all extremities, and full grip strength. (Tr. 342-43). Dr. Beamon found lumbar tender points without spasm. (Tr. 343).

In the decision, the ALJ summarized Dr. Beaman's examination records, noting that Dr. Beamon considered the MRI report. (Tr. 22). The ALJ found Dr. Beaman's opinion persuasive, based on the clinical examination findings that showed Plaintiff had a full range of motion and full motor strength. (Tr. 23). He further found that Dr. Palanca's opinion was inconsistent with Dr. Beaman's opinion. (Tr. 23). The ALJ also found that Dr. Palanca's statement that Plaintiff had these extreme limitations since 2009 was inconsistent with Plaintiff's earnings

record, which showed he engaged in substantial gainful activities for years after this date. (Tr. 23). In sum, these records support the ALJ's findings.

In addition, the ALJ found Dr. Palanca's extreme limitation findings inconsistent with the hearing testimony. (Tr. 23). The ALJ summarized the hearing testimony, including Plaintiff's subjective statements about pain and limitations, but noted that Plaintiff was the caretaker for his father and completed household tasks, such as meal preparation and cleaning, with some difficulties. (Tr. 21-22). This testimony supports the ALJ's finding that these activities are inconsistent with the extreme limitations found by Dr. Palanca.

In the decision, the ALJ explained that Dr. Palanca's opinion was not supported by his own treatment records and inconsistent with medical and other evidence of record. For the above reasons, substantial evidence supports the ALJ's consideration of Dr. Palanca's opinion.

### III.    Conclusion

For the reasons discussed above, the Court finds that the decision of the Commissioner is supported by substantial evidence and the Commissioner applied the correct legal standard. The decision of the Commissioner is **AFFIRMED**. The Clerk of Court is directed to enter judgment consistent with this opinion, terminate all deadlines, and close the case.

- 18 -

**DONE** and **ORDERED** in Fort Myers, Florida on July 12, 2024.

_____
DOUGLAS N. FRAZIER
UNITED STATES MAGISTRATE JUDGE


Copies furnished to:

Counsel of Record
Unrepresented Parties